IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Capital Investment Funding, LLC, ) | Civil Action No.: 6:12-3401-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Arthur Field, et al., ) | |
| ) | |
| Defendant/Respondent. ) | |
| _____ ) | |
| ) | Civil Action No.: 6:13-2326 -BHH |
| Capital Investment Funding, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| v. ) | |
| ) | |
| Arthur Field, et al., ) | |
| ) | |
| Defendant/Respondent. ) | |
| _____ ) | |

This matter is before the Court on the Report and Recommendation (2012 Case ECF No. 587; 2013 Case ECF No. 122) of United States Magistrate Judge Jacquelyn D. Austin recommending that the supplemental motions to dismiss in the 2012 Case[1] (2012 Case ECF Nos. 507, 510, 534, 535, 536, 543, 546, 547, 548) be granted, that the motion for sanctions in the 2012 Case (2012 Case ECF No. 573) be granted in part and denied in part, that the motions to dismiss in the 2013 Case (2013 Case ECF Nos. 24, 39, 42, 46, 47, 81, 93, 94, 113) be granted, and that both cases be dismissed. After carefully reviewing the Report and Recommendation, plaintiff's objections (2012 Case ECF Nos. 605; 2013 Case ECF No. 137), defendants objections (2012 Case ECF Nos. 602 ,603) and

---

[1] Unless otherwise denoted, all "ECF No." citations, herein, will be to the 2012 Case.

the defendants replies (2012 Case ECF Nos. 607, 608, 609, 610, 611, 612; 2013 Case ECF Nos. 139, 141, 142, 142, 144) the Court adopts the Report and Recommendation in full.

## BACKGROUND

The Report and Recommendations set forth in detail the relevant facts and standards of law on this matter, and the Court incorporates such with limited recitation. The plaintiff, Capital Investment Funding, LLC, ("the plaintiff"), an ongoing corporate entity, filed the 2012 Case on November 29, 2012, and the 2013 Case on August 26, 2013.[2] In the 2012 Case, the plaintiff alleges twenty-one causes of action (2012 Case, ECF No. 11); in the 2013 Case, the plaintiff alleges fourteen causes of action (2013 Case, ECF No. 1). The causes of action include four civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and numerous state law claims, and the plaintiff brings these actions to recover those moneys loaned by South Carolina noteholders who collectively invested $40 million, without knowledge of the fraudulent schemes created by and perpetuated by the defendants.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976).

---

[2] The plaintiff admits that the 2013 Case arises from the "same transactions and occurrences" as the 2012 Case and that it filed the 2013 Case to include defendants who were not served at all or claim not to have been served within the appropriate statutory time period in the 2012 Case (2013 Case, ECF No. 1 at 2). In the 2013 Case, the plaintiff attempts to incorporate by reference the entirety of the Second Amended Complaint filed in the 2012 Case. *Id.*

Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the Report. 28 U.S.C. § 636(b)(1). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b)(1).

## DISCUSSION

The plaintiff continues to argue that the Private Securities Litigation Reform Act ("PSLRA") is inapplicable and, therefore, not preclusive of its Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. Specifically, the plaintiff argues that it is neither an investor nor noteholder claiming any fraud in connection with the sale of securities. Rather, it is exclusively seeking relief for fraudulent real estate, loan, and money transfer transactions of the defendants. (Second Amend. Compl. ¶¶ 51-57, 65-78, 127-451.) Accordingly, the plaintiff argues, pursuant to the Sixth Circuit decision in *Ouwinga v. Benistar,* 419 Plan Services, Inc., 694 F.3d 783 (6th Cir. 2012), that it is not the kind of plaintiff precluded by the PSLRA. The magistrate judge properly rejected the plaintiff's view in this respect. The Court would say a little more, in affirmation.

The PSLRA precludes RICO Act claims that are based on alleged securities fraud. Section 107 of the PSLRA – which was enacted as an amendment to the RICO statute and accordingly is often referred to as the "RICO Amendment" – reads in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a

>violation of section 1962 . . . .

18 U.S.C § 1964(c); *see also* H.R. Conf. Rep. No. 104-369 at p. 47 (1995).

The magistrate judge's analysis is already well said and, in the Court's estimation, sufficiently answers the additionally specific objection of the plaintiff, here. The magistrate judge properly relied on the decision in *Bald Eagle Area Sch. Dist. v. Keystone Fin.*, Inc., 189 F.3d 321, to resolve it. There, the Third Circuit Court of Appeals considered a plaintiff's allegation that the defendant bank had assisted in "a massive Ponzi scheme . . . perpetrated through the purchase and sale of [securities] in violation of securities laws including § 10(b) of the Securities Exchange Act of 1934," and determined that the alleged scheme was "at the heart of th[e plaintiff's] RICO action." *Id*. at 328. The circuit court concluded that "[a] Ponzi scheme is ongoing, and it continues only so long as new investors can be lured into it so that the early investors can be paid a return on their 'investment.' Consequently, conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." *Id*. at 330.

As the magistrate judge, concluded, here, "[I]t appears the sale of securities could not have continued without additional monies raised from the sale of the unsecured promissory notes" from South Carolina investors, which were then be loaned to Defendants. (ECF No. 587 at 14.) Accordingly, the plaintiff's allegations of mail, bank and wire fraud claims, predicate acts of the defendants, fail to distinguish these transactions sufficiently from the conduct in connection with the sale of securities the plaintiff issued. They are all a part of an overall securities fraud scheme.

But, the plaintiff insists that the identity of the charging party matters. That because

it is no kind of investor in fraudulent securities, it never could have brought a PSLRA case instead. In fact, the plaintiff emphasizes it is a *beneficiary* of the fraud rather than its victim.

The plaintiff's resistence is not without a sense of logic, and the Fourth Circuit has not considered the issue. The Second Circuit, however, ably has.

In *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 275-76 (2d Cir. 2011), the Second Circuit explained that "[t]he language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant." *Id*. at 275-76. (citations omitted).

Importantly, the court stated, "The better interpretation 'and the one supported by the plain meaning of § 107 [of the PSLRA] is that the RICO Amendment bars claims based on conduct that could be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws." *Id*. at 278 (citation omitted). Crucially, the plain language of the statute "'does not require that the same plaintiff who sues under RICO must be the one who can sue under securities laws; its wording . . . does not make such a connection.'" *Id*. (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (citing Bald Eagle Area, 189 F.3d at 327). The Second Circuit enthusiastically quoted a district court in block:

> when Congress stated that "no person" could bring a civil RICO action alleging conduct that would have been actionable as securities fraud, it meant just that. It did not mean "no person except one who has no other actionable securities fraud claim." *It did not specify that the conduct had to be*

> *actionable as securities fraud by a particular person to serve as a bar to a RICO claim by that same person*.

*Hemispherx Biopharma, Inc. v. Asensio*, 1999 WL 144109, at *4 (E.D. Pa. Mar. 15, 1999) (emphais added).

Importantly, the plaintiff appears to effectively concede that the noteholders, as purchasers of securities, have an independent claim against Arthur Field and Scott Pfeiffer arising from their purchase of the same. (ECF No. 605 at 3-5.) The defendants also reiterate that the transactions at issue in this case – the plaintiff's lending of monies, fraudulently raised from investors, to the defendants – would have been actionable as fraud in the purchase of securities by the noteholders. (ECF No. 612 at 3-4.)

And, as the magistrate judge exhaustively recounted, the Second Amended Complaint[3] includes many allegations about misrepresentations made to noteholders and references the defendants' actions and failure to disclose information with respect to "investors" and "noteholders" rather than to the plaintiff. (ECF No. 587 at 12-14). The plaintiff alleges that the defendants' activities constituted Ponzi and money laundering schemes. (ECF No. 11 ¶¶ 138, 139, 150, 152, 160, 182, 201, 215, 240, 306, 488, 489.) The plaintiff alleges it received member capital contributions, from March through July 1999, totaling $76,000. *Id*. ¶ 28. Thereafter, the plaintiff sold unsecured promissory notes from 1999 through 2007, *id*. ¶¶ 29–49, and, by the end of 2007, the plaintiff was indebted to more than 680 South Carolina residents for more than $38 million, *id*. ¶ 49. The plaintiff also alleges that the sale of notes and renewals constituted the sale of securities. *Id*. ¶ 33.

---

[3] The 2013 Complaint is materially identical.

Plagerizing the magistrate judge, the Second Amended Complaint speaks for itself—"Plaintiff brings this action to recover those moneys loaned by South Carolina noteholders" and Plaintiff was left insolvent and unable to honor its obligations with its noteholders. (ECF No. 11 at 3.) The magistrate judge was thorough and clear that the plaintiff's attempts to tease from its Complaint the securities fraud, as mere background, from the predicate acts, being presently prosecuted, was ineffective. (ECF No. 587 at 15-17.) Instead, the magistrate judge "carefully examine[d] the predicate acts in relation to the overall fraudulent conduct to determine if they are part of a scheme that operated as a fraud on sellers or purchasers of securities." *Hollinger Int'l, Inc. v. Hollinger Inc.*, 2004 WL 2278545, at *6 (N.D. Ill. Oct. 8, 2004) (citations omitted); *see also In re Enron Corp. Securities Litigation*, 284 F. Supp. 2d 511, 622 (S.D. Tex. 2003) (noting that section 10(b) of the Securities Exchange Act of 1934 reaches a scheme that operated as a fraud on sellers or purchasers of securities).

Because such predicate acts were, by the Complaint's own language, so expressly necessary to the overall fraudulent scheme, it becomes immaterial that the plaintiff in this case was not specifically an investor in securities. *See MLSMK Inv. Co.*, 651 F.3d at 278. As the Magistrate Judge correctly noted, the noteholders cannot bring RICO claims because any conduct "alleged directly by the noteholders would be in connection with the sale of securities." (ECF No. 587 at 15.) Insofar as the PSLRA would prevent the noteholders themselves from maintaining an action, the plaintiff cannot bring the same action. The RICO claim is precluded.

The plaintiff's continued reliance, on *Ouwinga v. Benistar,* 419 Plan Services, Inc., 694 F.3d 783 (6th Cir. 2012), simply does not answer the bell. *Ouwinga* could not be any

more clear that, in that case, there was no fraud in the underlying security – the insurance policy. *Id*. at 790-91. There was none. *Ouwinga* was not a case where fraud existed in the sale or substance of the insurance policy but then in some companion suit, as here, tax fraud was also separately alleged. The at-issue security, an insurance contract, was simply not fraudulent from "a securities standpoint." *Id*. at 791. (citation and quotations omitted). The PSLRA bar does not operate simply against any transaction *involving* a security. There is no dispute that, unlike in *Ouwinga*, this present action, however articulated, is companion to an overall fraudulent scheme in securities. The securities underlying this, and every related case to it, *were fraudulent*.

## II.      Supplemental Jurisdiction

The magistrate judge, having recommended dismissing the plaintiff's four federal RICO claims, also recommended that the undersigned decline supplemental jurisdiction and dismiss the plaintiff's numerous state law claims. The plaintiff, in neither filed case, has objected to this recommendation. Instead, defendants Martin Ender, David Lorenzo, James Caserta, and Arthur Field have.

Federal statute, 28 U.S.C. § 1367(a) states that a district court in a controversy where it has original jurisdiction "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id*. Such jurisdiction, however, may be declined if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The defendant, however, represents that the plaintiff's causes would be time-barred if refiled in state court and, under the circumstances, it would be an abuse of the Court's discretion to decline to exercise its permissible jurisdiction to hear the state claims. *See Ketema v. Midwest Stamping, Inc.*, 180 Fed. Appx. 427 (4th Cir. 2006).

It is true that declination of supplemental jurisdiction may be an abuse of discretion "where the state statute of limitations expired prior to dismissal of the anchor federal claim." *Id. (citing Edwards v. Okaloosa County*, 5 F.3d 1431, 1433-35 (11th Cir.1993); *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1043 (5th Cir.1982).) But, the defendants have misapplied that line of cases, here. *Ketema*, and the like, principally operate where the statute of limitations expires during the prolonged pendency of a federal case such that the plaintiff is prejudiced in its ability to refile in state court upon dismissal of the state law claims; in other words, through no fault of its own, the plaintiff has been procedurally handcuffed. Such is not the case here. The defendants argue that they enjoy a preexisting statute of limitations defense, in existence *at the time of the filing of the original Complaint*. (ECF No. 603 at 4.) The statute of limitations, therefore, was not implicated by virtue of the federal case pendency. It is simply an existing defense. And, therefore, the Court is not abusing its discretion, to create some procedural entrapment, by dismissing the claims now. Certainly from the defendants perspective it would be more efficient for the Court to look behind the merits of one of any number of defenses they may have in this action as opposed to dismissing the case, but such would always be true. Supplemental jurisdiction would never be authorized if the touchstone was simply the ease of remaining in the Court where one already is. But, here, the case is not far along,

procedurally speaking.  Discovery has not begun.  The case is only now beyond the pleading stage in resolution of the motions to dismiss.  Certainly the parties have worked hard and over time.  The Court, however, would not keep the case now expansively state in nature.

**CONCLUSION**

The Court has carefully reviewed the plaintiff's and defendants' objections and the various replies and conducted a de novo review of the portions of the Report and Recommendation to which the plaintiff specifically objects.  The Court has also reviewed the entire Report and Recommendation for plain error in response to the plaintiff's general objections.  After considering the motion, the record, and the Report and Recommendation of the Magistrate Judge, this Court agrees with the thorough analysis of the Magistrate Judge.  The Report and Recommendation is adopted in full and incorporated herein by reference.  It is, therefore

ORDERED that the supplemental motions to dismiss in the 2012 Case (2012 Case ECF Nos. 507, 510, 534, 535, 536, 543, 546, 547, 548) be GRANTED, that the motion for sanctions in the 2012 Case (2012 Case ECF No. 573) be GRANTED IN PART, DENIED IN PART, that the motions to dismiss in the 2013 Case (2013 Case ECF Nos. 24, 39, 42, 46, 47, 81, 93, 94, 113) be GRANTED, and that both cases be DISMISSED.

IT IS SO ORDERED.

s/ Bruce Howe Hendricks
United States District Judge

January 20, 2014
Greenville, South Carolina

-10-